IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21CV544-GCM

| AARON MACKEY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | ORDER |
| CITY OF GASTONIA, et al., | ) |  |
| Defendants. | ) |  |

This matter is before the Court upon the Defendants' Motion for Summary Judgment (Doc. No. 13) and the Plaintiff's Motion for Partial Summary Judgment (Doc. No. 15). Both motions have been fully briefed and are ripe for disposition.

I.     FACTUAL BACKGROUND

The facts of this case are largely undisputed. On August 18, 2018, Defendant Officer Aaron Fulton ("Fulton"), a police officer with the City of Gastonia, was on routine patrol when he pulled over a Honda Civic that was being driven without a license plate. There were two women in the front seat, and a male passenger—later identified as Plaintiff Aaron Mackey—was in the backseat directly behind the driver. The traffic stop was recorded on Fulton's department-issued body-worn camera.

Upon contacting the driver Fulton smelled the strong odor of marijuana coming from inside the car. From where he stood, he saw an open bottle of liquor and a small digital scale of the kind commonly used to weigh street drugs lying on the rear floor next to Plaintiff's foot. Based upon these observations and the smell of marijuana, Fulton asked all three occupants to exit the car once backup arrived. As they were getting out Fulton told them he planned to just

issue citations for the marijuana if they were honest about it and let them go. In response, Plaintiff handed Fulton a small amount of marijuana, plus the digital scale Fulton had seen on the floor, which Plaintiff had since stuffed into his pants. With Plaintiff's consent, Fulton patted him down but did not discover any weapons. When Fulton asked Plaintiff for his name, Plaintiff identified himself under a false name.

Fulton searched the Honda's passenger compartment for additional contraband. During that search Fulton found a loaded .22 caliber handgun hidden in the pull-down storage compartment in the middle of the backseat, immediately to the right of where Plaintiff had been sitting. When Fulton asked Plaintiff, "Whose gun is this, is this yours too?", Plaintiff took off running.

Fulton pursued the Plaintiff, radioing he was in foot pursuit, and yelling at least twice for Plaintiff to "get on the ground." The foot pursuit lasted about two blocks, during which Plaintiff admits he was trying to get away. Towards the end of the foot pursuit Fulton withdrew his TASER and held it in his right hand while continuing to run. After running across a parking lot and adjoining street, Plaintiff came upon a chain link fence. At this point Plaintiff stopped running and turned towards Officer Fulton. Fulton contends Plaintiff's body movement was was inconsistent with an attempt to surrender, and in fact is described in police defensive tactics training as "blading" into a fighting position. Fulton then fired his TASER probes from about ten feet away, alleging that he feared that Plaintiff was about to assault him.

Plaintiff reacted by moving off to the left on the sidewalk, and it appeared to Fulton that one of the two TASER probes struck Plaintiff's hip and fell off. When Fulton saw a TASER wire dangling from Plaintiff's face, he realized that was where the other probe had lodged. In fact, the

2

probe had lodged in Plaintiff's left eye, causing serious injury.[1] Fulton resumed ordering Plaintiff to get on the ground while moving closer to try and grab him. While doing so, he saw Plaintiff reach up and swat at the probe, which dislodged it from his face. Because Plaintiff continued to ignore continuous commands to "get on the ground," Fulton decided to try using the TASER again, but this time in "drive stun" mode. When in drive stun mode, the end of the TASER is pressed against the skin or clothing while the trigger is pulled, which allows for a five second cycle of current as a method of "pain compliance." Fulton pressed the TASER against Plaintiff's back and pulled the trigger. Plaintiff continued to struggle with Fulton for about 15 seconds before Fulton was able to get him down on the sidewalk and handcuffed. When Plaintiff complained about his eye hurting, Fulton immediately radioed for EMS to respond. Plaintiff claims that Fulton told him "That's what happens when you run man." Fulton claims that he said this in response to Plaintiff's statement that he was so winded he could not tell Fulton that the probe had lodged in his eye.

Plaintiff was ultimately charged with resist/delay/obstruct ("RDO"), unlawful possession of a concealed firearm, possession of marijuana, and possession of drug paraphernalia. He plead guilty to the firearm charge in exchange for dismissal of the remaining charges.

Plaintiff filed this action alleging claims under 42 U.S.C. § 1983 as well as state law claims arising from his arrest. Plaintiff's First Amended Complaint asserts the following ten causes of action:

1. Section 1983 claim for excessive force against Officer Fulton.

2. "Alternate" Section 1983 claim for excessive force against Officer Fulton under the 14th Amendment.

---

[1] Fulton contends that given that only one of the two probes had embedded, no electrical current could have been delivered.
3

Case 3:21-cv-00544-GCM   Document 21   Filed 11/14/22   Page 3 of 12

3. Section 1983 claim against the City of Gastonia for "failure to properly train."

4. Claims for negligence and gross negligence against Fulton (for the use of force) and the City (for negligent hiring, retention, and supervision).

5. (Labeled Sixth Claim for Relief) Excessive force in violation of state statute.

6. (Labeled Seventh Claim for Relief) Malicious prosecution under state law against Fulton.

7. (Labeled Eighth Claim for Relief) Assault and battery against Fulton.

8. (Labeled Ninth Claim for Relief) Section 1983 malicious prosecution claim against Fulton.

9. (Labeled Tenth Claim for Relief) Section 1983 claim against Fulton for "fabrication of evidence."

10. (Labeled Eleventh Claim for Relief) False arrest claim against Fulton.

The Defendants have moved for summary judgment as to each claim and on the defenses of qualified immunity and public official immunity. Plaintiff moves for partial summary judgment as to his Fourth Amendment excessive force claim (First Claim for Relief).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id*.

4

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Id*. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)). In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

### B. Excessive Force

In his First and Second Claims for Relief under § 1983, Plaintiff invokes the Fourteen Amendment's due process clause. However, the Supreme Court has rejected that as a basis for liability for the use of force associated with an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach"). Therefore, to the extent Plaintiff relies on the Fourteenth Amendment in his excessive force claims, summary judgment in favor of the Defendants is appropriate as a matter of law.

Plaintiff has also alleged excessive force in violation of the Fourth Amendment and North Carolina state law (First and Sixth Claims for Relief). Defendant Fulton argues that he is entitled to summary judgment as to Plaintiff's claim for excessive force. In the alternative, Officer Fulton contends that he is entitled to qualified immunity. Plaintiff moves for partial summary judgment as to his excessive force claim.

5

An excessive force claim is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 388. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. It should be noted that the officer's subjective intent or motive is irrelevant at this step. *See id.* at 397. Instead, the Court must determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642 (1996).

The test of objective reasonableness requires that the Court balance "the nature and quality of the intrusion on an individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The Supreme Court has identified three factors to guide this balancing: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id*. This inquiry also requires that the Court "consider the facts at the moment the challenged force was employed" "with an eye toward the proportionality of the force in light of all the circumstances." *Yates v. Terry*, 817 F.3d 877, 885 (4th Cir. 2016) (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015).

The Court finds that the undisputed facts support Officer Fulton's use of the taser as objectively reasonable under the circumstances. While the crimes at issue were nonviolent misdemeanors, Plaintiff's possession of a concealed loaded weapon, along with drugs and drug paraphernalia could have reasonably led Officer Fulton to suspect that Plaintiff was capable of violence. Moreover, it is undisputed that Plaintiff was actively evading arrest by fleeing and

ignoring Officer Fulton's multiple commands to stop and get on the ground. When Plaintiff reached a fence and was unable to continue his flight, he stopped and turned abruptly towards Officer Fulton. While Plaintiff claims that he was preparing to surrender, Officer Fulton perceived that Plaintiff was in a "blading" stance, indicating preparation to fight. Unfortunately, the body camera video is shaky and of poor quality making it difficult, if not impossible, to determine whether Plaintiff was in a fighting stance. Plaintiff argues that Officer Fulton knew he did not have any weapons because he had previously conducted a pat down of Plaintiff. Moreover, Plaintiff contends he made no threatening comments or gestures just prior to being tased. While it is true that a pat-down of Plaintiff did not reveal any obvious weapons, only a thorough search would have guaranteed that Plaintiff was not concealing any weapons on his person. Given Plaintiff's active resistance and repeated refusals to submit, the Court finds that it was objectively reasonable for Officer Fulton to believe that, once cornered, a fleeing Defendant might continue to evade arrest by attempting to fight. While it is unfortunate that Plaintiff suffered a grievous injury, an otherwise reasonable use of force is not actionable just because it results in unintentional injury. *See Stainback v. Dixon*, 569 F.3d 767, 773 n. 7 (7th Cir. 2009).

Plaintiff makes much of the fact that Officer Fulton told him "That's what happens when you run man." However, an officer's subjective intent or motive is irrelevant when determining if his conduct is objectively reasonable. *See Graham,* 490 U.S. at 397.

The Court finds that all three *Graham* factors weigh in favor of the Defendant. Accordingly, the Court grants Defendant's motion for summary judgment on the issue of excessive force and denies Plaintiff's partial motion for summary judgment.

The Court finds in the alternative that Officer Fulton is entitled to qualified immunity on the issue of whether excessive force was used against Plaintiff. When a defendant raises the

7

defense of qualified immunity, the Court must make a two-step inquiry. "The first step is to determine whether the facts, taken in the light most favorable to the non-movant, establish that the officer violated a constitutional right." *Yates*, 817 F.3d at 884. If so, the Court must then determine whether the right was clearly established. *Id.*

Even if Officer Fulton had violated Plaintiff's constitutional rights, the Court finds that such a right was not clearly established. The constitutional right at issue herein is the right to not be subjected to tasing while running from a police officer, ignoring the officer's repeated commands to get on the ground, and turning abruptly toward the officer when further flight has been prevented by a physical barrier. The Fourth Circuit has found that taser use constitutes unreasonable force in response to "minimally risky physical resistance," such as refusing to release one's arms for handcuffing, refusing to get out of a car when instructed, and refusing to terminate a phone call. *See Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 904-905 (4th Cir. 2016) (reviewing cases from other circuits). In *Estate of Armstrong*, the Fourth Circuit found excessive force where the decedent was tased while seated on the ground, hugging a post, and surrounded by police officers and security guards. *Id.* at 906. In *Yates*, the court found a constitutional violation and rejected defendant's claim of qualified immunity where the plaintiff was tased when he simply turned his head towards the officer, despite complying with the officer's orders to place his hands on his car. *Yates*, 817 F.3d at 885. The *Yates* plaintiff was tased a second time after he fell to the ground, and a third time after reaching for his cell phone although the officer knew he was sliding the phone to his brother. *Id.* The facts in these cases are clearly distinguishable from those presented herein. Plaintiff was actively resisting by fleeing the scene and ignoring Officer's repeated commands to stop and get

8

Case 3:21-cv-00544-GCM   Document 21   Filed 11/14/22   Page 8 of 12

on the ground. The Court finds that Officer Fulton's conduct was not in violation of clearly established law. Accordingly, he is entitled to qualified immunity.

### C. Excessive Force in Violation of N.C. Gen. Stat. §15A-401(d)

N.C. Gen. Stat. § 15A-401(d)(1)(b) permits a police officer to use physical force "[t]o defend himself . . . from what he reasonably believes to be the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." North Carolina has embraced the *Graham* objective reasonableness standard as the yardstick for measuring the appropriateness of an officer's use of force. *See Little v. Smith*, 114 F.Supp.2d 437, 445 (W.D.N.C. 2000) (North Carolina law "is co-extensive with the Constitution of the United States on the issue of excessive force"). As the Court has found that Officer's Fulton's actions were objectively reasonable as a matter of law, Plaintiff's state law excessive force claim must fail.

### D. *Monell* Claim

In his Third Claim for Relief, Plaintiff alleges that the Defendant City was negligent in their failure to supervise and train Officer Fulton in violation of 42 U.S.C. § 1983 (*Monell* claim). Because the Court has found that Plaintiff did not suffer a constitutional violation, his *Monell* claim must likewise fail. As the Supreme Court has observed, "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Smith v. Atkins*, 777 F. Supp.2d 955, 966 (E.D.N.C. 2011) ("As for count three, because there is no underlying constitutional violation, plaintiffs' claim in count three concerning defendants' customs, policies, practices, procedure, and training fails.").

### E. Negligence and Assault and Battery Claims

In his Fourth Claim for Relief Plaintiff alleges that both Fulton and the City were negligent and grossly negligent in Fulton's use of excessive force and in the City's hiring and retention, and "grossly inadequate supervisory and training policies and practices." (Am. Compl. ¶ 131). In his Eighth Claim for Relief, Plaintiff alleges a claim of assault and battery against Officer Fulton. The Defendants have asserted the defense of public official immunity as to Plaintiff's state law tort claims. The analysis of this defense under North Carolina law is "functionally identical" to the qualified immunity defense discussed above and thus bars these claims against Officer Fulton as well. *See Cooper v. Sheehan*, 735 F.3d 153, 160 (4th Cir. 2013). Plaintiff's claim against the City for negligent hiring, retention, supervision, and training must likewise fail, as it is derivative upon Officer Fulton.

### F. Malicious Prosecution and False Arrest Claims (Seventh, Ninth, and Eleventh Claims for Relief)

To succeed on a claim for malicious prosecution, Plaintiff "must show 'that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019). Plaintiff bears the burden of proving the absence of probable cause. *See*, *e.g.*, *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002) ("To prove an absence of probable cause, Brown must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that she was violating the disorderly conduct ordinance."); *Mathis v. Dowling*, 749 S.E.2d 284, 287 (N.C. Ct. App. 2013) (in order to "recover for malicious prosecution, the plaintiff bears the burden of proving that the defendant" instituted a criminal action against the plaintiff "without probable cause").

Police are not required to have a quantum of belief sufficient to prove guilt beyond a reasonable doubt; rather, they need only a "fair probability" the Plaintiff's conduct violated the law. *See D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (probable cause "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity,'" which is why "[p]robable cause 'is not a high bar'"); *State v. Wilkes*, 807 S.E.2d 672, 675-76 (N.C. Ct. App. 2017) ("The degree of certainty required for probable cause is a 'fair probability,' which courts have acknowledged is proof greater than 'reasonable suspicion' but less than a 'preponderance of the evidence.'").

As Plaintiff acknowledges, he plead guilty to unlawful possession of a concealed firearm in exchange for dismissal of the other charges against him. Plaintiff fails to show a lack of probable cause as to these other charges. As for possession of marijuana and the drug scale, Plaintiff fully admits both offenses, even to the point of handing the items over to Officer Fulton. For the charge of RDO in violation of N.C. Gen. Stat. § 14-223, Plaintiff admits running and making Fulton chase him for several blocks, a clear violation of the statute. *See*, e.g., *State v. Peters*, 804 S.E.2d 811, 815 (N.C. Ct. App. 2017) (N.C. Gen. Stat. § 14-223 "proscribes not merely resisting an arrest, but includes any willful and unlawful resistance, delay, or obstruction of a public officer in the discharge of his or her duty"). The video evidence supports this as well. Moreover, Plaintiff also admits another basis for the RDO charge, intentionally giving Fulton a "fake" name. (Doc. No. 13-3 at 6-7). *In re J.L.B.M.*, 627 S.E.2d 239, 247 (N.C. Ct. App. 2006) (giving a false name to police constitutes RDO). Because Plaintiff's charges were well-supported by probable cause, his claims for malicious prosecution fail as a matter of law, as does his state law claim for false arrest. *Williams v. City of Jacksonville Police Dep't*, 599 S.E.2d 422, 430 (N.C. Ct. App. 2004) ("Probable cause is an absolute bar to a claim for false arrest.").

### G. Fabrication of Evidence (Tenth Claim for Relief)

In his Tenth Claim for Relief, Plaintiff alleges that Officer Fulton falsely reported that Plaintiff had a gun and cocaine, and omitted that Plaintiff "complied" with instructions and was never assaultive. (Doc. 1, Exh. 3, ¶¶ 168-170). First, there is no evidence that Fulton ever reported or charged Plaintiff with possession of cocaine. Second, Plaintiff plead guilty to possessing the handgun found in the seat next to where he was sitting. Lastly, there is no dispute that Plaintiff ran and failed to comply with Officer Fulton's instructions to get on the ground. The Court finds that there is simply no basis for this claim and it must fail as a matter of law.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment is hereby DENIED;

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is hereby GRANTED.

Signed: November 14, 2022

Graham C. Mullen
United States District Judge